830 So.2d 124 (2002)
Paula DEAKTER, as Successor Trustee of the Mendelson Living Trust, Appellant,
v.
Augusto MENENDEZ, Jr., Appellee.
No. 3D01-1629.
District Court of Appeal of Florida, Third District.
September 4, 2002.
Reconsideration Denied November 27, 2002.
*125 Isicoff, Ragatz & Koenigsberg and Daniel Stuzin and Eric Isicoff, for appellant.
Adorno & Zeder and Raoul G. Cantero, III, and Omar Ortega, for appellee.
Before JORGENSON, COPE and SORONDO, JJ.
PER CURIAM.
The Mendelson Living Trust, the plaintiff *126 below,[1] appeals from a final summary judgment entered for Augusto Menendez, the defendant below; an order denying his motion for recusal of the trial judge; an order denying his motion for rehearing, vacation of final judgment and leave to amend the complaint; and an order determining Menendez's entitlement to fees. For the following reasons, we reverse.

FACTS AS ALLEGED BY MENDELSON
Harry Mendelson was the president, sole shareholder, and director of Delson Design International, Inc. (Delson Design). During the 1980s, Delson Design engaged in business with defendant Menendez and entities owned and controlled by him, including S.L. Associates, Ltd. On at least two occasions, Menendez, through S.L. Associates, asked Delson Design for loans, which Delson Design provided. S.L. Associates and Menendez failed to repay the loans. The parties agreed in 1987 that the sum owing was approximately $610,000. Therefore, in 1988, Menendez executed two notes, one for approximately $400,000 and the other for approximately $210,000, in favor of Delson Design ("the 1988 notes"). Menendez signed as a personal guarantor for S.L. Associates. S.L. Associates made some payments, but then filed for bankruptcy and listed Delson Design as an undisputed unsecured creditor in the amount of $593,597. No payments were made to Delson Design in the bankruptcy. In 1994, Mendelson contacted Menendez to resolve the balance owed on the 1988 notes.
The following facts alleged by Mendelson are disputed: Mendelson claims that in 1995 Menendez signed a renewal note ("the 1995 note") in the amount of $600,000, which was made payable to Mendelson personally as Delson Design had been dissolved. The 1995 note was prepared by Mike Anderson who was then Mendelson's attorney and son-in-law. Anderson kept the original and Mendelson kept a copy. Anderson unexpectedly died six weeks later. In October 1997, Mendelson and his wife created the Mendelson Living Trust, assigning all their property to the trust. Mendelson endorsed his photocopy of the 1995 note to the trust. When the 1995 note matured on March 2, 2000, Menendez failed to pay the $600,000 then due, despite Mendelson's demand for payment.

PROCEEDINGS BELOW
In July 2000, the Mendelson Trust, through Mendelson, sued for breach of the 1995 note. Prior to filing his first amended complaint, Mendelson claimed he was unable to locate the original of the note because his daughter had, without Mendelson's knowledge, destroyed her husband Mike Anderson's records some time after his death. Mendelson included in the amended complaint allegations he deemed necessary to sue on a lost note. Menendez asserted a counterclaim of spoliation of evidence, alleging that Mendelson intentionally destroyed the 1995 note and the underlying business records regarding the loans.
Menendez moved for summary judgment, which the trial court granted on several grounds. Mendelson then filed a verified motion for recusal of the trial judge and a motion for rehearing, vacation of final summary judgment, and leave to amend the complaint. Both motions were summarily denied citing Metropolitan Dade County v. Martinsen, 736 So.2d 794 (Fla. 3d DCA 1999) (holding that a party *127 who engages in serious misconduct in discovery forfeits its right to proceed).

I. QUESTIONS OF FACT
On a motion for summary judgment, the court must read the record in the light most favorable to the non-moving party. See Kaufman v. Mutual of Omaha Ins. Co., 681 So.2d 747, 751 (Fla. 3d DCA 1996); see also Moore v. Morris, 475 So.2d 666, 668 (Fla.1985)(holding that summary judgment is inappropriate unless the facts of the case are so crystallized that disposition of questions of law are all that remain for the trial court to determine). The court may not encroach on the province of the trier of fact by electing to weigh the evidence or adjudging the credibility of the witnesses. See Sierra v. Shevin, 767 So.2d 524, 525 (Fla. 3d DCA 2000); Bitz v. Ed Knox CLU & Assoc., P.A., 721 So.2d 823 (Fla. 3d DCA 1998).
The trial court erred in granting summary judgment as there are several genuine issues of material fact which defeat summary judgment. See Young v. Curgil, 358 So.2d 58, 59 (Fla. 3d DCA 1978) (holding that a cause can be dismissed for fraud only upon the "most blatant showing of fraud, pretense, collusion or other similar wrongdoing."); cf. Maharaj v. State, 778 So.2d 944, 956 (Fla.2000) (holding that proof of perjury requires proof of more than mere inconsistencies, memory lapse, unintentional error or oversight); Evans v. State, 603 So.2d 15, 17 n. 4 (Fla. 5th DCA 1992) ("If a witnesses's testimony is impeached with inconsistencies on material issues, as opposed to collateral matters, and thereby the witness's veracity and credibility are placed in question, the trier of fact is entitled to judge the witness's credibility in its entirety and accept or reject the witness's testimony on those and other issues as well."), quoted in Hanono v. Murphy, 723 So.2d 892, 893-894 (Fla. 3d DCA 1998); O'Donovan v. Citibank, 710 So.2d 654 (Fla. 3d DCA 1998) ("Whether the ... proffered proof of the note's essential terms was adequate for its reestablishment is a matter for determination by the trier of fact and should not be decided as a matter of law.").

II. ISSUES OF LAW
The trial court's remaining grounds for summary judgment are erroneous not only because the court made factual findings, but it also erred in its legal analyses.

A. Entitlement to Sue on a Lost Note
We first address the trial court's ruling that "the plaintiff could not demonstrate his entitlement to enforce a lost note under Florida Statute § 673.3091 because Plaintiff is unable to show (i) he was in possession of the alleged instrument and entitled to enforce it when loss of possession occurred; and (ii) that the loss of possession was not the result of a transfer."

1. Whether the Note Was Lost/Destroyed
The trial court erred in granting summary judgment because Mendelson does not know whether the note was lost or destroyed. See § 673.3091(1), Fla. Stat. (1993). Section 673.3091(1)(c) provides that the instrument must be lost, destroyed or stolen; in short, the person seeking to enforce the instrument must not be able to obtain the instrument. Mendelson and his daughter stated under oath that the 1995 note was either inadvertently destroyed or lost, which is all the statute requires. There is no requirement that Mendelson prove exactly how he lost possession of the note, i.e., whether he lost possession because it was lost or because it was destroyed. Menendez misreads our opinion in Cardet v. Rodriguez, 673 So.2d 578 (Fla. 3d DCA 1996) as holding that "a *128 plaintiff seeking to enforce a lost note must conclusively demonstrate that the note was in fact lost." In Cardet, we merely held that the plaintiff, as the movant for summary judgment, failed to carry his burden by conclusively demonstrating that the note was lost. 673 So.2d at 578. Likewise, the defendant in this case has failed to carry his burden, as the movant for summary judgment, by conclusively demonstrating that the note was not lost or destroyed. See Sasson, 715 So.2d at 1067 (holding that the movant for a summary judgment has the burden of conclusively demonstrating the nonexistence of any genuine issue of material fact).

2. Whether Mendelson Had Possession When the Note Was Lost
The trial court erred as a matter of law in concluding that Mendelson is not entitled to enforce the note because he did not have physical possession of the note when the loss occurred. See § 673.3091(1), Fla. Stat. (1993). If Mendelson's attorney or his daughter had actual custody of the original 1995 note and Mendelson had the power to exercise control over it, then Mendelson had constructive possession of the note when it was lost. See Bush v. Belenke, 381 So.2d 315 (Fla. 3d DCA 1980) (defining constructive possession as possession in which a person "has such control over the property that he may deliver the possession of it, if he so desires, as for example, where an agent holds property for his principal.").

3. Whether the Loss Was the Result of a Transfer
Next, the trial court erred in ruling that Mendelson cannot prove that loss of the 1995 note was not the result of a transfer. See § 673.3091(1)(b), Fla. Stat. (1993). Mendelson swore under oath that he did not assign or transfer the 1995 note and that the original was lost or destroyed. Not only does this testimony defeat summary judgment, but Menendez presented no evidence to the contrary. See Cheng v. Sirichoke, 745 So.2d 1152, 1153-1154 (Fla. 3d DCA 1999).

B. Consideration
The trial court erred as a matter of law in ruling that the 1995 note was unenforceable for lack of consideration. The trial court determined that the debt on the 1988 notes could not form the basis for consideration for the 1995 note because the 1988 debts were owed by S.L. Associates, not Menendez, and were owed to Delson Design, not Mendelson. It is undisputed that S.L. Associates' debt under the 1988 loans was discharged in bankruptcy, that no distribution was made to Delson Design or Mendelson, and that Menendez was the personal guarantor on the 1988 loans. Therefore, Menendez became individually obligated to Delson Design for repayment of the 1988 loans. See, e.g., Sure-Snap Corp. v. State of Vermont, 983 F.2d 1015, 1019 (11th Cir.1993) (holding that the discharge of a debt in bankruptcy does not discharge the obligations of a third-party guarantor of that debt); see also 11 U.S.C. § 524(e) (1993). When Delson Design was dissolved, all of its assets, including the 1988 notes, were distributed to the sole shareholder, Mendelson. See § 607.1405(1)(d), Fla. Stat. (1993). Therefore, Mendelson individually became Menendez's creditor as to the 1988 notes. When Menendez renewed[2] the debt in 1995, the note properly was made payable to Mendelson.
No additional consideration was required to support the 1995 note. Section 673.3031, Florida Statutes (1993) provides:

*129 (1) An instrument is transferred for value if: ... (c) The instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due.
(2) If an instrument is issued for value as stated in subsection (1), the instrument is also issued for consideration.
See also, e.g., Goldberger v. Regency Highland Condominium Ass'n, 452 So.2d 583 (Fla. 4th DCA 1984) (holding that execution of a note in satisfaction of an antecedent debt is satisfactory consideration for the note). Even if, as Menendez suggests, any claim on the 1988 notes was time-barred in 1995, section 95.04, Florida Statutes (1982), provides that a promise to pay a debt barred by the statute of limitations is enforceable if signed and in writing. See Nolden v. Nolden, 650 So.2d 84 (Fla. 5th DCA 1995). Of course, it remains the province of the trier of fact to determine whether the 1995 note was "an acknowledgment of, or promise to pay, a debt barred by a statute of limitations." § 95.04, Fla. Stat. (1982).
Entry of summary judgment was improper as Menendez failed to conclusively establish proof of absence of consideration for the alleged renewal promissory note.

C. Assignment of the 1995 Note to the Mendelson Trust
As a matter of law, Mendelson effectively transferred any rights he had under the 1995 note to the Mendelson Trust, regardless of whether the note was assigned before or after its loss or destruction.[3] If the note was assigned after it was lost, Mendelson's right to enforce the note was still transferable. See National Loan Investors, L.P. v. Joymar Associates, 767 So.2d 549 (Fla. 3d DCA 2000) ("We see no reason why this right of enforcement [on a lost note] cannot be assigned when recognizing such a right would prevent defendants ... from receiving a windfall."). Even if the note was assigned before it was lost, the assignment was effective, even though Mendelson endorsed only a copy rather than the existing original. All of Mendelson's property was automatically transferred to the trust under the terms of his general assignment[4] of property to the trust. Mendelson's act of endorsing the copy was unnecessary; the same would have been true had he endorsed the original 1995 note to the trust. See Rose v. Teitler, 736 So.2d 122 (Fla. 4th DCA) ("It is well established that an `assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned.'") (quoting State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995)); Dove v. McCormick, 698 So.2d 585, 589 (Fla. 5th DCA 1997), rev. denied, 705 So.2d 569 (Fla.1998).
Because we reverse the summary judgment in its entirety, the order awarding fees is also reversed.

*130 III. DISQUALIFICATION OF THE TRIAL JUDGE

Instead of merely ruling on the legal sufficiency[5] of Mendelson's motion, the judge cited Metropolitan Dade County v. Martinsen, 736 So.2d 794 (Fla. 3d DCA 1999), implying that Mendelson had engaged in fraud or misconduct. The judge exceeded the proper scope of inquiry, which alone is a basis for disqualification. See Fla. R. Jud. Admin. 2.160(g); Cave v. State, 660 So.2d 705, 708 (Fla.1995) ("When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification.") (citations omitted); J & J Indus., Inc. v. Carpet Showcase of Tampa Bay, Inc., 723 So.2d 281, 283 (Fla. 2d DCA 1998) ("Attempts to refute the charges of partiality exceed the scope of inquiry and alone establish grounds for disqualification.") (citations omitted); Kielbania v. Jasberg, 744 So.2d 1027, 1028 (Fla. 4th DCA 1997) (holding that "even though there is no evidence of actual bias, we find that recusal is necessary to satisfy the appearance of justice."). Upon remand, this case shall be assigned to a different judge for further proceedings.
REVERSED AND REMANDED.
JORGENSON and SORONDO, JJ., concur.
COPE, J. (concurring).
I write separately to say the present record clearly establishes that defendant-appellee Augusto Menendez, Jr., executed the 1995 note for $600,000.
The record contains a letter from defendant's counsel to plaintiff's counsel saying: "Enclosed is the document entitled `Note' which should have been attached to Defendant's Response to Plaintiff's First Request for Production." (R. 415). The enclosure is a copy of the $600,000 note, dated March 2, 1995, bearing the initials of defendant Menendez.
Since the defendant had a copy of the note in his own file, it defies belief that the defendant can now claim that the note was a forgery. Are we to believe that someone forged the defendant's initials to a copy of the note, crept into the defendant's office, and left the note there?
When the defendant was asked about this copy of the note during his deposition, he conceded that he turned over his files to his attorneys in response to the plaintiff's discovery request, but denied all recollection of the note.[******]
The defendant has never squarely denied under oath that he executed the 1995 note. His deposition contains the following:
Q There is no original that exists at this time so I'm asking if you recognize this being a copy do you recognize this document?
A No, I mean if I don't see the original I don't know if this is a note that I signed or not.
Q Looking at the signature above the name Augusto Menendez, Jr. do you recognize that as your signature?
A This is a signature that is all crooked. This is a signature on top of a *131 line. I don't know if that is my signature or not.
Q Are you saying it's a forgery?
A I'm not saying it's a forgery.
I'm telling you unless I see the original I am not going to tell you this is a note signed by me. I don't know.
R. 180 (emphasis added).
The defendant has introduced an entirely meaningless defense in the form of document examiner testimony. The defendant takes the position that he cannot be held liable unless the original note is produced for examination by his expert document examiner, so the document examiner can offer an opinion about whether the defendant signed the note. Since the original is lost, the defendant claims he is entitled to have the case dismissed. And in the meantime the defendant has produced expert document examiner testimony (based on examination of the xerox copy) to suggest that the defendant's signature on the 1995 note may be a forgery.
The point is this. The "I don't remember" defense and the document examiner testimony are utterly irrelevant where (as here) the record conclusively establishes that the defendant executed the note.
Obviously defendant Menendez executed the note. He produced a copy of the note from his own file, and his initials are on it. There is no innocent explanation for Mr. Menendez having a copy of the note in his own file. Indeed the defendant has not even attempted to offer an explanation for it, not in the trial court and not in this court.
The defendant cannot make his liability disappear (as he has attempted to do) by smoke and mirrors. Summary judgment in this case should have been entered for the plaintiff, not the defendant. I join the majority opinion on the understanding that on remand, the plaintiff may renew the motion for summary judgment.
NOTES
[1] Harry Mendelson filed the lawsuit as trustee of the Mendelson Living Trust. He died during the pendency of this appeal. Paula Deakter has been substituted as successor trustee.
[2] For summary judgment purposes, we assume that the 1995 note was executed by Menendez and that it was, in fact, a renewal note.
[3] We reiterate that, for purposes of our analysis of the summary judgment, we assume that the 1995 note was, in fact, signed by Menendez, was otherwise valid, and that it was lost; these are fact issues which must be determined at trial.
[4] The Assignment and Nominee Agreement provides:

Nominees [Harry and Beatrice Mendelson] intend to have transferred all property owned by Nominees to the Trust, including but not limited to the property identified on Schedule "A," whether real or personal, tangible or intangible, but exclusive of annuities, IRA's, retirement plans under the Internal Revenue Code, or any property the transfer of which would violate any agreement restricting the transfer of such property.
The broad language of the assignment clearly assigns all property not specifically excluded by the assignment. Nothing on Mendelson's copy of the 1995 note indicates that assignment was prohibited, nor did Menendez offer any evidence to that effect.
[5] "The motion is legally sufficient if the facts alleged demonstrate that the moving party has a well grounded fear that he or she will not receive a fair trial at the hands of the judge." Cave, 660 So.2d at 708.
[******] The record also contains correspondence leading up to the execution of the note. [R. 242-44].