**EQUITY INVESTMENT PARTNERS, LP, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**United States of America, Counterclaim Plaintiff,**

v.

**Equity Investment Partners, LP; Equity Investment Partners, LLC; Randolph Lenz, Counterclaim Defendants.**

Case No.: 1:09–CV–60002.

United States District Court, S.D. Florida.

Aug. 18, 2009.

Eric Lee, Lee & Amtzis, P.L., Boca Raton, FL, for Plaintiff.

Thomas F. Koelbl, United States Department of Justice, Washington, DC, for Defendant.

*ORDER GRANTING IN PART UNITED STATES' MOTION FOR SUMMARY JUDGMENT [DE 32]; DENYING EQUITY LP'S MOTION FOR SUMMARY JUDGMENT [DE 6]*

ALAN S. GOLD, District Judge.

THIS CAUSE is before the Court upon Equity Investment Partners, LP's ("Equity LP") Motion for Summary Judgment [DE 6] and the United States of America's ("United States") Motion for Summary Judgment [DE 32]. This case concerns the priorities and rights of the United States and Equity LP in the property located at 3900 Galt Ocean Drive, # 1917, Fort Lauderdale, Florida 33308. Equity LP seeks summary judgment that its mortgage on the subject property is superior to the IRS's tax lien on the same property, and requests the Court permit Equity LP to sell the property free and clear of the IRS's tax lien. The United States, on the other hand, seeks judgment that the IRS's tax lien has priority because Equity LP does not have a valid security interest in the subject property. I held oral argument on August 14, 2009. Having reviewed the Motions and the relevant case law, and being otherwise duly advised, I conclude that Equity LP does not hold a valid security interest in the subject property. I therefore deny Equity LP's Motion for Summary Judgment and grant in part the United States' Motion for Summary Judgment.

## I. *Background*

### A. *The Businesses*

Equity Investment Partners, LP ("Equity LP") is a partnership that was formed between Randolph W. Lenz ("R. Lenz"), Stephen D. Weinroth, and G. Chris Anderson. (Gov. Ex. 1, DE 32–4, R. Lenz Dep. Tr., p. 15). The same individuals also founded Equity Investment Partners, LLC ("Equity LLC"). (*Id.* at pp. 20–21). On February 29, 2000, R. Lenz, Weinroth, and Anderson transferred control of both Equity LP and Equity LLC to R. Lenz's children, Stacie Daley ("S. Daley") and Corbett Lenz ("C. Lenz"). (*Id.* at p. 24; Gov. Ex. 4, DE 32–5, Stacie Daley Dep. Tr., pp. 8, 10–11; Gov. Ex. 5, DE 32–5, Written Consent of Members of Equity

LP; Gov. Ex. 6, DE 32–5, Written Consent of Members of Equity LLC). Equity LP is owned by Stacie Daley and Corbett Lenz through two entities, Equity LLC and ALFT, LLC, and Equity LLC is owned by Stacie Daley and Corbett Lenz directly. (Gov. Ex. 5, DE 32–5, Written Consent of Members of Equity LP; Gov. Ex. 6, DE 32–5, Written Consent of Members of Equity LLC).

### B. *Loans*

R. Lenz was the controlling shareholder and served as chairman of the Board of Directors of Connecticut Bank of Commerce ("CBC"), a depository institution organized under the laws of Connecticut. (Gov. Ex. 9, DE 32–7, FDIC Settlement and Release Agreement). On November 22, 2002, the Federal Deposit Insurance Corporation ("FDIC") commenced an administrative enforcement proceeding against R. Lenz, resulting in an asset freeze over all assets owned or controlled by him. (Equity LP Ex. 10, DE 8–11, R. Lenz Aff. ¶ 3). Since 2003, S. Daley and C. Lenz began loaning funds to their parents R. Lenz and K. Lenz to cover their living expenses. (Equity LP Ex. 9, DE 8–10, S. Daley Aff. ¶ 5; Gov. Facts, DE 32–2, ¶ 7). The funds were loaned from various entities controlled by S. Daley and C. Lenz, including Equity LP, EMBP LLP, Corsta Corporation, First Out Corporation, and Equity Merchant Banking Corporation, but most of the funds were advanced by Equity LP. (*Id.* at ¶¶ 9, 10).

Most of the funds were advanced to R. Lenz's personal account and were used by R. Lenz and his wife K. Lenz for personal living expenses, including food, vacations, automobile expenses, and household expenses, and credit card bills. (*Id.* at ¶¶ 5, 7). Some funds were paid directly to the law firm of Winston & Strawn for their representation of R. Lenz and K. Lenz in various proceedings brought by the Federal Deposit Insurance Corporation ("FDIC"). (*Id.* at ¶ 6). By October 2004, more than $2.4 million had been loaned to R. Lenz and K. Lenz by the various corporate entities, and subsequent to entering into the Mortgage (discussed below), Equity LP continued to pay various expenses on behalf of R. Lenz and K. Lenz. (*Id.* at ¶¶ 21, 26).

### C. *The Property and Mortgages*

On September 1, 1999, Alass Investment Partners issued a warranty deed to R. Lenz for the property located at 3900 Galt Ocean Drive, # 1917, Fort Lauderdale, Florida 33308 ("Property"). (Equity LP Ex. 1, DE 8–2, Warranty Deed). Equity LP entered into a Mortgage and Security Agreement ("Mortgage") with R. Lenz on October 19, 2004, granting Equity LP an interest in the Property for $300,000. (Equity LP Ex. 2, DE 8–3, Mortgage and Security Agreement). The Mortgage was recorded in the Broward County public records on October 21, 2004. (*Id.*). At the time the parties entered into the Mortgage, Equity LP did not make a contemporaneous payment of $300,000 to R. Lenz. (Gov. Ex. 17, DE 32–9, Equity LP Loans 2003–10/21/04).

According to S. Daley and C. Lenz, the purpose of the Mortgage was to secure repayment of the funds they had advanced to K. Lenz and R. Lenz for their living expenses over the years. (Equity LP Ex. 9, DE 8–10, S. Daley Aff. ¶¶ 7–8, 13; Equity LP Ex. 10, DE 8–11, R. Lenz Aff. ¶ 11). More specifically, according to S. Daley's Affidavit, as the amounts of the loans to R. Lenz and K. Lenz increased, S. Daley and C. Lenz discussed with R. Lenz and K. Lenz obtaining security for the loans, and had conversations which resulted in R. Lenz agreeing to enter into the Mortgage. (Equity LP Ex. 9, DE 8–10, S. Daley Aff. ¶¶ 7–8). S. Daley's Affidavit indicates that she does not recall the "specifics" of the

conversations. (*Id.* at ¶ 8). Further, in S. Daley's subsequent deposition, conducted less than three months after the prepared her Affidavit, she testified repeatedly that she did not remember anything about any conversations or discussions regarding the Mortgage as security for the previous loans, and the basis for the reference to a discussion or conversation in the Affidavit was that the Mortgage and Security Agreement indicated that some such discussion must have occurred. (Gov. Ex. 4, DE 32–5, S. Daley Dep. Tr., pp. 30–34).[1] S. Daley further testified that she did not remember why the mortgage was for $300,000. (*Id.* at p. 35).

Additionally, in November 2004, as part of a settlement entered into with the FDIC of all claims against R. Lenz, K. Lenz, C. Lenz, S. Daley, and other entitles, Corsta Corporation, owned by C. Lenz and S. Daley, transferred $8.5 million to the FDIC. (Equity LP Ex. 9, DE 8–10, S. Daley Aff. ¶ 11). According to S. Daley's Affidavit, when the various family members entered into the agreement with the FDIC, it was "agreed and understood" that the Property would be used to secure repayment of the funds advanced on behalf of R. Lenz and K. Lenz, and that the Mortgage that would be securing the Property would be issued in Equity LP's name as the overall entity entitled to recover repayment of the loans on behalf of the various entities owned and controlled by S. Daley and C. Lenz. (*Id.* at ¶¶ 13–14). S. Daley claims a written participation agreement establishing such terms was entered into, but cannot be located. (*Id.* at ¶ 15). During her deposition, S. Daley testified that she did not remember whether the agreement was in writing, what the

agreement said, when the agreement was made, or who drafted or signed the agreement. (Gov. Ex. 4, DE 32–5, S. Daley Dep. Tr., pp. 38–39).

### D. *Warranty Deed in Lieu of Foreclosure*

R. Lenz failed to make any payments under the Mortgage. (Gov. Ex. 14, DE 32–9, Equity LP Interrogatory Resp., p. 6). On October 9, 2008, R. Lenz executed and delivered a Warranty Deed in lieu of foreclosure ("Warranty Deed") to Equity LLC for the Property. (Equity LP Ex. 12, DE 8–13, Warranty Deed). The Warranty Deed was recorded in the Broward County records on October 10, 2008. (*Id.*). Equity LP did not issue a Satisfaction of Mortgage to R. Lenz. (Equity LP Ex. 9, DE 8–10, S. Daley Aff. ¶ 29; Equity LP Ex. 10, DE 8–11, R. Lenz Aff. ¶ 19). According to S. Daley and C. Lenz, the Property was transferred to Equity LLC to pay them back for the advances made to R. Lenz. (Gov. Ex. 4, DE 32–5, Stacie Daley Dep. Tr., p. 49; Gov. Ex. 8, DE 32–6, C. Lenz Dep. Tr., p. 27;). Equity LP did not provide notice of the sale to the IRS or the United States. (Equity LP Ex. 9, DE 8–10, S.Daley Aff. ¶ 30).

### E. *IRS Assessments*

Between 1990 and 2004, the Internal Revenue Service ("IRS") made assessments against R. Lenz and K. Lenz for unpaid income taxes for the years 1989, 1990, 1992, and 1993. (Gov. Ex. 10, DE 32–9, Closing Agreement re Tax Liability; Gov. Ex. 12, DE 32–9, Notice of Federal Tax Lien). R. Lenz and K. Lenz satisfied their liability for 1989. (Gov. Ex. 11, DE

---

1. Q: Do you say that you had the discussion because you remember the discussion of because a Mortgage and Security Agreement as formed?
A: I have mortgage and security agreements which indicate there must have been some

discussion. I don't remember the conversations.
(Gov. Ex. 4, DE 32–5, S. Daley Dep. Tr., p. 33).

32–9, C. Byrd Aff. ¶ 6). On August 8, 2005, the IRS prepared a Notice of Federal Tax Lien ("Notice") against R. Lenz and K. Lenz for the remaining liabilities. (Gov. Ex. 12, DE 32–9, Notice of Federal Tax Lien). The IRS filed the Notice in the Broward County public records on August 16, 2005. (*Id.*). As of May 1, 2009, the amount owed by R. Lenz for his federal income tax liabilities for 1990, 1992 and 1993 was $3,515,335.31. (Gov. Ex. 11, DE 32–9, C. Byrd Aff. ¶ 7).

## II. *Legal Standard*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *See id.* ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir.2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001). "For factual issues to be considered genuine, they must have a real basis in the record. . . . [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir.2005). In other words, "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney*, 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## III. *Analysis*

Equity LP has moved for summary judgment that, since the Mortgage was filed before the Notice, Equity's interest takes priority over the United States' tax lien. The United States moves for summary judgment on the same issue, arguing the Mortgage does not create a security interest in the Property under federal law, and the tax lien therefore takes priority. The United States further contends that

the Warranty Deed in lieu of foreclosure extinguished any claim Equity LP had in the Property. As discussed below, I conclude that Equity LP does not have a valid security interest in the Property. I therefore do not reach the question of whether the Warranty Deed in lieu of foreclosure extinguished Equity LP's claim.[2]

### A. Federal Law on Tax Liens

■ The United States claims that its tax lien, even though it was recorded after the Mortgage, takes priority over the Mortgage. A federal tax lien is created by operation of law pursuant to 26 U.S.C. § 6321.[3] 26 U.S.C. § 6322[4] indicates that the lien is imposed at the date of assessment. See Sande v. U.S., 323 Fed.Appx. 812, 815 (11th Cir.2009) (" § 6321 creates a statutory lien that arises automatically once an assessment is made and the IRS gives notice and demands payment."). However, a lien is not effective "against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a). In the case of real property, subsection (f) requires notice be filed "in one office within the State (or the county, or other governmental subdivision), as des-

ignated by the laws of such State, in which the property subject to the lien is situated." 26 U.S.C. § 6323(f)(1)(A)(1).

Applying this federal law to the present case, it is undisputed that the Mortgage was filed in Broward County before the IRS's Notice was filed. However, because the tax lien is imposed as of the date of assessment, which occurred before the Mortgage was recorded, the tax lien takes priority unless Equity LP can demonstrate that it is a holder of a security interest pursuant to 26 U.S.C. § 6323(a).[5] A security interest is defined as follows:

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1). Equity LP must establish all conditions of Section 6323(h)(1) in order to be protected by Section 6323(a). See In re Haas, 31 F.3d 1081, 1085 (11th Cir.1994) ("To come with-

---

**2.** During oral argument, the United States agreed that, if I were to conclude that Equity LP does not have a valid security interest in the subject property, I need not address whether the subsequent warranty deed extinguished any interest held by Equity LP. If I were to reach such issue, however, I would conclude that Equity LP's mortgage did not survive the Warranty Deed in lieu of foreclosure, issued for consideration of $10.00, and that Equity LP cannot quiet title to the Property.

**3.** "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in

addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.

**4.** "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

**5.** Equity LP acknowledges that it is not a purchaser, mechanic's lienor, or a judgment lien creditor.

in the protection of § 6323(a), a holder of a security interest must establish four conditions: (1) that the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss; (2) that the property to which the security interest was to attach was in existence at the time the tax lien was filed; (3) that the security interest was, at the time of the tax lien filing, protected under state law against a judgment lien arising out of an unsecured obligation; and (4) that the holder of the security interest parted with money or money's worth." (citing 26 U.S.C. § 6323(h)(1))). The United States argues that Equity LP's interest does not qualify under the statute because Equity LP did not part with money or money's worth.

### B.  *Money or Money's Worth*

The term "money or money's worth" is defined as "money, a security . . ., tangible or intangible property, services, and other consideration reducible to a money value." 26 C.F.R. § 301.6323(h)–1(a)(3).[6] It may also include "money, a security . . ., tangible or intangible property, services, and other consideration reducible to a money value" or "any consideration . . . which was parted with before the security interest would otherwise exist if, under local law, past consideration is sufficient to support an agreement giving rise to a security interest." *Id.* Finally, "[A]ny other consideration not reducible to a money value [is not] consideration in money or money's worth." *Id.*; *see also United States v. 3809 Crain Ltd. P'ship,* 884 F.2d 138, 142 (4th Cir.1989).

■  The parties acknowledge, and I independently conclude, that the Eleventh Circuit has not ruled on the meaning of "money or money's worth" as it pertains to this case. I therefore turn to the law of other circuits for guidance. The Fourth Circuit Court of Appeals is the only circuit to have addressed the requirements for an antecedent debt to satisfy the "money or money's worth" provision of 26 U.S.C. § 6323(a). In *United States v. 3809 Crain Limited Partnership,* 884 F.2d 138 (4th Cir.1989), the Fourth Circuit analyzed whether an antecedent extension of credit satisfied the "money or money's worth" requirement such that a deed of trust on the debtor's property was a valid security interest. The Fourth Circuit acknowledged that § 6323(a) does not expressly require the holder of the purported security interest to part with money or money's worth in exchange for the security interest, but concluded that "the separate acts—the act allegedly constituting the past consideration and the act granting the 'security interest'—must be more than circumstantially related." *Id.* at 143. The Fourth Circuit further explained, "The applicable regulations discuss 'money or money's worth' in terms of 'consideration,' indicating that, as generally true in contract law, the reciprocating performance must be made in consideration of, i.e., in a bargained exchange for, the former act." *Id.*

In *3809 Crain,* the creditor bank failed to produce any evidence that the deed of trust was given as reciprocation for the prior extension of credit, and, as such, the court concluded that the fact that debt was owed and a security interest was subsequently granted did not establish the necessary exchange to constitute "money or

---

**6.**  Treasury regulations have the effect of law. *See Cottage Savings Ass'n v. Commissioner,* 499 U.S. 554, 559, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991) (Treasury regulations and interpretations continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law.)

money's worth" and create a valid security interest under 26 U.S.C. § 6323(a). *Id.* ("Other than appellants' continued assertion that the trustees' grant of the deed of trust rests on what the appellant characterizes as First National's prior "extension of credit," there is no evidence in the record to support this view. Of course, the trustees would not have granted the deed of trust if First National had not lost the $3 million, but this merely circumstantial relationship does not suffice.").

While not binding on this Court, I find persuasive the reasoning of the Fourth Circuit in *3809 Crain,* as did the Honorable Judge Cecilia M. Altonaga in a remarkably similar prior action: *Equity Investment Partners LP v. Karin Lenz and the United States,* Case No 08–60630–Altonaga, ("Compass Point Litigation"). The Compass Point Litigation involved the competing interests of Equity LP and the United States of America in a property located at 30 Compass Point, Fort Lauderdale, Florida 33308 and owned by K. Lenz. Similar to the case before me, the key issue in the Compass Point Litigation was whether Equity LP's mortgage, recorded before a federal tax lien, was a valid security interest pursuant to 26 U.S.C. § 6323(a). Equity LP argued that the credit previously extended to R. Lenz and K. Lenz constituted money or money's worth to support the security interest of the mortgage. Notably, and as the parties agreed during oral argument, the terms and form of the mortgage securing Equity LP's interest in the Compass Point property are identical to those of the mortgage securing Equity LP's interest in the Galt Ocean Property. Judge Altonaga applied the Fourth Circuit's reasoning in *3809 Crain* and concluded that, because Equity LP was unable to produce any objective evidence demonstrating that either the

mortgage or mortgage modification on the Compass Point property was intended to satisfy the antecedent debt, Equity LP could not show that the mortgage or mortgage modification was in exchange for the antecedent debt. Judge Altonaga held, therefore, that the mortgage or mortgage modification on the Compass Point property did not satisfy the "money or money's worth" requirement, and Equity LP did not hold a valid security interest under § 6323(a). I acknowledge that there are several factual variations in the Compass Point Litigation and the present litigation. However, given the similarities of parties, the terms and forms of the mortgages, and the principles at hand, I find Judge Altonaga's analysis, including her application of *3809 Crain,* persuasive.[7]

Equity LP disagrees, arguing that *3809 Crain* is inapplicable because it applies Maryland, not Florida, law. First, the *3809 Crain* language cited above references federal law, namely 26 U.S.C. § 6323 and whether the "money or money's worth" requirement must be in exchange for the later-granted security interest. The *3809 Crain* court applied Maryland law to provide an alternate basis for concluding no valid security interest was created. The court noted that, under Maryland law, "a new promise cannot be based on past consideration unless there was an understanding at the time the 'consideration' was extended that there would be some repayment or other performance on the part of the purported promisor." 884 F.2d at 143. Because there was no such understanding at the time the consideration was given, the court concluded there was no past consideration to support a later act. *Id.* at 144. Contrary to this specific analysis of Maryland law on the validity of past consideration, the Fourth Circuit's conclusion that 26 U.S.C. § 6323

7. Equity LP has appealed Judge Altonaga's decision. (*Equity Investment Partners LP v.* *Karin Lenz and the United States,* Case No 08–60630–Altonaga, DE 81 and 85).

requires consideration to be *in exchange for* the security interest applies equally to all types of "money or money's worth" under § 6323 and is wholly independent of whether there was an agreement at the time the past consideration was given.

Further, *3809 Crain* comports with the application of Florida law in the present case. Florida law permits past consideration to support a valid agreement: "An instrument is issued or transferred for value if: ... (c) The instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due." Fla. Stat. § 673.3031; *see also Deakter v. Menendez*, 830 So.2d 124, 128–29 (Fla.Dist.Ct. App.2002) (holding outstanding debt on 1988 loan sufficient consideration for 1995 loan renewal); *Goldberger v. Regency Highland Condominium Ass'n, Inc.*, 452 So.2d 583, 585 (Fla.Dist.Ct.App.1984) (holding because 1978 note was given in payment of a previous note representing a loan obtained in 1975, no further consideration was necessary to support enforcement of the 1978 note); *Frank v. Intercontinental Bank, etc.*, 372 So.2d 543 (Fla. Dist.Ct.App.1979).

Equity LP has presented no case law or argument to suggest why the provision for past consideration under Florida law does not require the subsequent act to be *in exchange for* the past consideration, and to hold to the contrary would yield the absurd result of any instance of past consideration supporting a later agreement, no matter the intent of the parties. Further, the comments to Fla. Stat. § 673.3031, cited by Equity LP, support the holding that the antecedent debt need be related to the later agreement. *See* Fla. Stat. § 673.3031 (comment) ("Case # 1. X owes Y $1,000. The debt is not represented by a note. Later X issues a note to Y *for the* debt." (emphasis added)). Finally, the cases cited by Equity LP, *Deakter v. Menendez*, 830 So.2d 124 (Fla.Dist.Ct.App.2002), and *Goldberger v. Regency Highland Condominium Assoc., Inc.*, 452 So.2d 583 (Fla. Dist.Ct.App.1984), support *3809 Crain*, as, in both of those cases there was no dispute whether the subsequent agreement was intended and in exchange for the past consideration; instead, both cases involved agreements in writing in which the parties specified the past consideration at issue and its relation to the later security interest.[8]

Applying the above federal and Florida law to the present case, I conclude that Equity LP did not part with money or money's worth. Equity LP did not receive a contemporaneous payment of $300,000 at the time R. Lenz signed the Mortgage, but Equity LP argues that the Mortgage was extended as security for the funds that had been advanced to R. Lenz and K. Lenz in years past, and that it was "agreed and understood" that the Property would be used to secure repayment of the funds advanced on behalf of R. Lenz and K. Lenz to Equity LP.[9] As discussed above,

---

8. My present application of *3809 Crain* does not contradict my ruling in *Garcia v. United States of America*, 2002 WL 31409580 (S.D.Fla. Sept. 6, 2002). In *Garcia*, I concluded that there was no parting with "money or money's worth" because the holder of the mortgage had not loaned any money to the mortgagor (the mortgagee had arranged for a third party company in the Dominican Republic to transfer the funds to the mortgagor, and the mortgagee had not made any payments to the third party company). Because

I concluded that the mortgagee had not actually parted with any "money or money's worth" in *Garcia*, I did not reach the issue of whether the granting of the security interest had to be *in exchange for* the "money or money's worth," which is the issue in the present case.

9. In its Reply to the United States' Motion for Summary Judgment [DE 38], Equity LP argues the United States should be judicially estopped from arguing that Equity LP did not

Florida law permits past consideration, or antecedent debt, to support a contract. But Equity LP must still demonstrate that the Mortgage was granted in exchange for the prior loans. Equity LP has failed to meet that burden, as it has failed to produce anything more than circumstantial evidence that the Mortgage was intended to cover R. Lenz's antecedent debt.

The Mortgage and Security Agreement does not refer to the prior loan, nor is there any additional documentation to support Equity's contention. The only evidence presented by Equity LP are the affidavits of S. Daley and R. Lenz created for the purpose of Equity LP's summary judgment motion in this case. When questioned about that affidavit and the assertion that the Mortgage was in reciprocation for the loans previously extended to R. Lenz, S. Daley testified that she recalled neither the substance nor even the existence of any conversations or discussions regarding the Mortgage as security

for the previous loans, and admitted that she only believed such discussions took place because the Mortgage and Security Agreement indicated that some such discussion must have occurred.[10] Yet, as stated above, the Mortgage and Security Agreement does not reference such a reciprocal agreement or any antecedent debt. Accordingly, the scintilla of evidence present in the affidavits is insufficient, as a jury could not reasonably find for Equity LP based on it. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Because Equity has failed to produce objective evidence that "money or money's worth" was exchanged for an interest in the Property, I conclude the Mortgage does not qualify as a security interest under Section 6323(a). The IRS tax lien therefore takes priority, and the United States is entitled to summary judgment on that ground.[11]

### C. *Equity LLC*

As to the relative priorities of Equity LLC and the United States in the Property, 26 U.S.C. § 7425(b)[12] provides that

---

part with money or money's worth because the United States argued in a previous action, *Equity Investment Partners LP v. Karin Lenz and the United States,* Case No 08–60630–Altonaga, that the funds were loaned to R. Lenz, not K. Lenz. Equity LP states that, in the prior case, the United States argued, "these prior advances were made to Randolph Lenz independent of the mortgage and mortgage modification pursuant to a January 1, 2002 Loan and Security Agreement between Equity and Randolph Lenz." and "Equity's past payments to Randolph Lenz were made pursuant to a separate security agreement." (DE 38, pp. 4–6).
This language is not contradictory to the position the United States has taken in the present matter. The United States has not argued that the subject funds were loaned to Karin Lenz (rather than Randolph Lenz), nor does the United States even dispute that the funds were loaned to Randolph Lenz. Accordingly, the United States present position is not inconsistent with its prior position.

10. Specifically, S. Daley testified, "I have mortgage and security agreements which in-

dicate there must have been some discussion." (Gov. Ex. 4, DE 32–5, Stacie Daley Dep. Tr., p. 33).

11. Because I conclude that the IRS tax lien takes priority over Equity LP's Mortgage, I do not reach the issue of fraudulent transfer.

12. "[A] sale of property on which the United States has or claims a lien, or a title derived from enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property—

(1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); ...". 26 U.S.C. § 7425(b).

when a property is sold pursuant to a "nonjudicial sale," the sale is made "subject to and without disturbing" the lien if 1) notice of the lien was recorded more than 30 days before the sale, and 2) the United States is not given notice of the sale as described in 26 U.S.C. § 7425(c)(1).[13] It is undisputed that the federal tax lien was duly recorded in the Broward County public records on August 16, 2005, more than 30 days prior to the execution of the Warranty Deed in lieu of foreclosure on October 9, 2008, and that the United States was not provided notice of the sale as required by 26 U.S.C. § 7425. Accordingly, Equity LLC took the Property subject to the federal tax lien.

### IV. *Conclusion*

For the reasons stated above, I conclude that Equity LP did not part with "money or money's worth" in exchange for the Mortgage. It follows, then, that Equity LP is not the holder of a security interest under 26 U.S.C. § 6323, and the United States' tax lien is superior to any interest of Equity LP. As to the relative priorities of the United States and Equity LLC, I conclude that, because the tax lien was property recorded and the United States was not given notice of the sale from R. Lenz to Equity LLC, Equity LLC took the Property subject to the tax lien, and the United States' tax lien is superior to the interest of Equity LLC. It is hereby:

ORDERED AND ADJUDGED:

1. Equity Investment Partners, LP's Motion for Summary Judgment [DE 6] is DENIED.

2. The United States of America's Motion for Summary Judgment [DE 32] is GRANTED in PART in accordance with this Order.

13. "Notice of sale.—Notice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary." 26 U.S.C. § 7425(c)(1).