Damoorgian, J.
-CitiBank, N.A., as Trustee for WAMU Series 2007-HE2 Trust (“the Bank”), appeals the trial court’s order granting final judgment in favor of Tangerine Manning (“Borrower”) following a bench trial based on the Bank’s failure to comply with conditions precedent. Borrower cross-appeals that same final judgment, arguing that affirmance is required regardless of the Bank’s compliance with conditions precedent due to lack of standing. We reverse the final judgment in favor of Borrower and remand for entry of a final judgment in favor of the Bank.
In May of 2010, the Bank, in its capacity as trustee, filed a one count verified mortgage ■ foreclosure complaint against Borrower., The complaint alleged that the Bank had the right,to enforce the note and -mortgage; that-Borrower defaulted on the note; and that all conditions precedent to the filing of- the foreclosure, action had been performed or had occurred. Although the Bank did not attach a copy of the note to its complaint, it did attach a copy of the mortgage listing. Washington Mutual Bank as the original lender. The Bank later amended the -complaint and attached a note bearing an -undated, blank indorsement from the original lender. Borrower denied all-of the material allegations of the Bank’s and raised several affirmative defenses, including lack of standing and failure to - comply with the mortgage’s notice requirements.
The matter ultimately proceeded to a bench trial where the Bank presented its case through the testimony of a single witness. The witness worked as a research officer- for JPMorgan Chase Bank, N.A. (“JPMorgan”). which serviced Borrower’s loan on behalf of the Bank. The witness was extensively trained as to JPMorgan’s record keeping policies and procedures. Through its witness, the Bank introduced the original note indorsed in blank, and the witness testified that the blank indorsement was placed on the note sometime prior to September of 2008. - In other words, the note, was indorsed in blank prior to the filing of the Bank’s initial complaint in 2010.
As to how the Bank became the' holder of the note, the witness outlined the following series of transactions. On April 1, 2007, the original ■ lender transferred certain loans into the “WAMU Series 2007-HE2 Trust.” The pooling and servicing agreement (“PSA”) listed-the original lender as the “Seller and Servicer” and the Bank as the “Trustee.” The accompanying mortgage loan schedule identified Borrower’s loan as one of the loans maintained in the *680 trust. In September 2008, JPMorgan acquired all of the original lender’s assets through the FDIC as evidenced by a purchase and assumption agreement. Section 3.1 of that purchase and assumption agreement, titled “Assets Purchased by Assuming Bank,” provided that “the Assuming Bank specifically purchases all mortgage servicing rights and obligations of the Failed Bank.” Then, on March 1, 2010, JPMorgan officially assigned Borrower’s mortgage “[t]ogether with the note” to the Bank. Ultimately, the witness testified that JPMorgan, as servicer of the loan, was the entity that physically held the original note for the Bank when the initial complaint was filed. Through the witness, the Bank introduced the PSA and the accompanying mortgage loan schedule, the purchase assumption agreement, and the assignment of mortgage.
In addition to the foregoing, the Bank also sought to introduce the breach letter sent to Borrower by “Chase Home Finance LLC.” In order to lay the foundation for the admission of the breach letter, the witness testified as follows with regard to his personal knowledge of how the ser-vicer, JPMorgan, creates and mails breach letters:
I have been to the breach letter department in Jacksonville, Florida where we had an in-class training on the red flag reports that ... the system generates when a loan is known to go into default. Then the quality team in the breach department reviews that red flag report on a daily basis to confirm that the loan is actually in default and needing a breach letter.
Once that has been confirmed through the quality control measure, then the letter is generated and it is sent ... [fjirst class mail.
The breach letter, dated February 4, 2010 and addressed to the mortgaged property, was thereafter entered into evidence. The witness then confirmed that the breach letter “went out.” The witness further explained that the entity that mailed the breach letter, Chase Home Finance LLC, was a wholly-owned subsidiary of JPMor-gan. In fact, at the time the letter was mailed, the witness explained that he was technically employed by Chase Home Finance LLC. The witness further explained that in May of 2011, JPMorgan and Chase Home Loan LLC officially merged, however the systems and procedures remained the same:
By May of 2011, when the merger happened, ... I was a short sale negotiator where I would get approval for short sales that would happen, and my job function on April 29 of 2011 was the exact same as it was May 2 of 2011. So ... Chase Home Finance LLC being owned by JPMorgan Chase Bank, NA, I had access to the exact same systems, I had access to the same portfolio of short sales that I was working on. Absolutely nothing changed for me in my day to day business except I have to change my voicemail that it was JPMorgan Chase Bank, NA and not you’ve reached Chase Home Loan .... Nothing was different. I sat in the same chair, all the same systems I had access to were the exact same, we were still working Chase Loans,
In other words, JPMorgan and Chase Home Finance LLC’s standard office practices were one and the same.
After the Bank rested, Borrower moved for an involuntary dismissal based on lack of standing. After the court denied the motion, Borrower rested without presenting any evidence and the matter proceeded to closing arguments. During closing, Borrower argued that the Bank failed to present any evidence that the breach letter was ever mailed out, pointing to the fact *681 that no return receipt number appeared on the breach letter admitted into evidence. Alternatively, she argued that there was no evidence that Chase Home -Finance LLC had a sub-servicing agreement with JPMorgan. In response, the Bank’s attorney specifically referenced the portion of the transcript where the witness testified that the breach letter had been mailed out, as well as to the relationship between the servicer and its subsidiary which actually mailed out the letter. At the conclusion of the trial, the court found that the Bank failed to prove that the breach letter was sent out. On the issue of standing and damages, however, the court found in favor of the Bank. It then entered final judgment in favor of Borrower.
This appeal and cross-appeal follows.
“When reviewing a judgment rendered after a nonjury trial, the trial court’s findings of fact come to the appellate court with a presumption of correctness and will not be disturbed unless they are clearly erroneous.” Stone v. BankUnited, 115 So.3d 411, 412 (Fla. 2d DCA 2013). As to standing, however, “ ‘[w]e review the sufficiency of the evidence to prove standing to bring a foreclosure action de novo.’ ” Sosa v. U.S. Bank Nat’l Ass’n, 153 So.3d 950, 951 (Fla. 4th DCA 2014) (quoting Lacombe v. Deutsche Bank Nat’l Tr. Co., 149 So.3d 152, 153 (Fla. 1st DCA 2014)).

a) Conditions Precedent

“[A] mortgagee’s right to the security for a mortgage is dependent upon its compliance with the terms of the mortgage contract, and it cannot foreclose until it has proven compliance.” DiSalvo v. Sun-Trust Mortg., Inc., 115 So.3d 438, 439 (Fla. 2d DCA 2013). “In Florida, a party’s adherence to contractual conditions precedent is evaluated for substantial compliance or substantial performance,” including “a condition precedent in a mortgage requiring notice prior to foreclosure.” Green Tree Servicing, LLC v. Milam, 177 So.3d 7, 13 (Fla. 2d DCA 2015). With regard to the condition precedent at issue in this case, namely the mailing of a breach letter, the “mailing must be proven by producing additional evidence such as proof of regular business practices, an affidavit swearing that the letter was mailed, or a return receipt.” Allen v. Wilmington Tr., N.A., 216 So.3d 685, 688, (Fla. 2d DCA 2017).
The mortgage in this case provides in relevant part that “Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument”. It further provides that notice “shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower’s notice address if sent by other means.” In order to prove compliance with the mortgage’s notice requirements, the Bank introduced the breach letter associated with Borrower’s loan. The witness then testified, based on his personal knowledge and training, as to JPMorgan’s regular business practices of creating and mailing breach letters. The witness further confirmed that the breach letter associated with Borrower’s loan in fact “went out.” Moreover, although the breach letter was not actually, mailed by JPMorgan but rather by its wholly-owned subsidiary. Chase Home Finance LLC, the witness testified that he worked for both entities and that their general business procedures were essentially one and the same.
This evidence was sufficient to raise a presumption that the breach letter was indeed mailed to Borrower via first class mail in accordance with the servicer’s standard procedures for mailing breach letters, and in compliance with the mortgage’s notice requirements. See Brown v. Giffen Indus., Inc., 281 So.2d 897, 900 (Fla. 1973) *682 (holding on rehearing that “reliance on the presumption of mailing on the basis of normal office procedure was. reasonable and proper, in light of the total lack of contrary evidence by petitioner”); Pupo v. City of Hialeah, 91 So.3d 925, 926 (Fla. 1st DCA 2012) (citing Brown and holding .that “[evidence of an office’s standard mailing practices creates a rebuttable presumption that a particular item was mailed”); This presumption, in turn, was not rebutted as Borrower did not present any evidence to the' contrary. See Jelic v. CitiMortgage, Inc., 150 So.3d 1223, 1225 (Fla. 4th DCA 2014) (holding that the bank was entitled to summary judgment because it “submitted an affidavit stating that notice was sent, along with an attached copy of the letter and records showing the letter was mailed” which the borrower did not rebut).
Borrower nonetheless argues that affirmance is required because the Bank failed to present any evidence showing that Chase Home Finance LLC, the entity that actually created and mailed the breach letter, was the Bank’s authorized sub-servicer. We reject this argument because the evidence established that JPMorgan' was authorized to use Chase Home'Finance LLC to mail the breach letter. Specifically, Section 3.01 of the PSA provides that “the Servicer shall have full power and authority, acting alone or through Sub-Servicers as provided in Section 3.02, to do or cause to be done any and' all things-in connection with such servicing and administration in accordance with policies and procedures generally accepted in the mortgage banking industry.”
In any event, as there was direct evidence; that the . breach letter was mailed and no evidence that Borrower attempted to cure the default, Borrower was clearly not prejudiced. See Caraccia v. U.S. Bank, Nat’l Ass’n, 185 So.3d 1277, 1280 (Fla. 4th DCA 2016) (“ ‘Absent some prejudice, the breach of a condition precedent does not constitute a defense to. the enforcement of an otherwise valid contract.’ ” (quoting Gorel v. Bank of N.Y. Mellon, 165 So.3d 44, 47 (Fla. 5th DCA 2015)).

b) Standing

“A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to' foreclose” at the time the lawsuit was filed. McLean v. JP Morgan Chase Bank Nat’l Ass’n, 79 So.3d 170, 173 (Fla. 4th DCA 2012). “A holder seeking to enforce a note indorsed in blank- must prove that it was in physical possession of the note at the time it filed suit ” U.S. Bank Nat’l Ass’n v. Becker, 211 So.3d 142, 144 (Fla. 4th DCA 2017). As this Court has recognized, “[e]ven where a third party has physical possession of the note, so long as the plaintiff ‘had the power to exercise control over it, then [the plaintiff] had constructive possession of the note.’ ” Caraccia, 185 So.3d at 1279 (quoting Deakter v. Menendez, 830 So.2d 124, 128 (Fla. 3d DCA 2002)).
In the present case, the Bank’s witness testified that the blank indorsement was placed on the subject note sometime before September of 2008, which predates the filing of the original complaint. The witness further testified that, JPMorgan, the servicer of the loan, physically possessed the indorsed note on behalf of the Bank at all relevant times. This testimony alone was more than sufficient to prove that the-Bank constructively possessed the indorsed note from the inception of the foreclosure action. See Caraccia, 185 So.3d at 1279 (holding that “when an agency relationship such as [a holder/servieer exists], the element of possession can be met through either actual -or constructive possession”); Peuguero v. Bank of Am., N.A., 169 So.3d 1198, 1202-03 (Fla. 4th DCA 2015) (“A plaintiff need not prove the exact date of a necessary [indorsement to show standing at the inception of the foreclosure *683 action—testimony, that the [i]ndorsement was effectuated before the filing of the complaint will suffice.”). ..
Moreover, as further evidence that it held the note at the time it filed the complaint, the Bank introduced the PSA. Section 2.01 of the PSA, titled “Conveyance of Mortgage Loans,” provides that:
In connection with such transfer and assignment; the Depositor does hereby deliver to, and deposit with, the Custodian acting on behalf of the Trustee ... the following documents or instruments with respect to each Mortgage Loan so transferred and assigned:
(a) the original Mortgage Note, [indorsed in blank or-in the following form; “Pay to the order of CitiBánk, N.A., as Trustee under the applicable agreement, without recourse.”
Such evidence, especially when coupled with the note indorsed in'blank by the original lender,- is sufficient to demonstrate the Bank’s standing to foreclose at the inception of the suit. See Bolous v. U.S. Bank Nat'l Ass’n, 210 So.3d 691, 694 (Fla. 4th DCA 2016) (relying on comparable PSA provisions and holding that the “pooling and servicing agreement’s terms arid corresponding mortgage loan schedule identifying the borrower’s loan at issue, along with the other evidence presented through the analyst, was sufficient to demonstrate that the bank was the .owner or holder of the borrower’s note at the time the bank filed the original complaint”). .
Based upon -the foregoing, we reverse and remand for entry of final judgment in favor of the Bank.

Reversed and remanded.

Ciklin, C.J., and Hanzman, Michael A., Associate Judge, concur.